| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |

|  |  |  |
|---|---|---|
| VERLESHIA ROBINSON,<br><br>*Plaintiff(s)*,<br><br>v.<br><br>U.S. SHIPPING, INC.,<br><br>*Defendant(s)*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. _____<br>Jury |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Verleshia Robinson ("Plaintiff" or "Robinson") and brings this action against Defendant U.S. Shipping, Inc. ("Defendant" or "U.S. Shipping") for violations under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et. seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, and 29 U.S.C. 621, *et seq.* ("ADEA"), and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §21.001, *et seq.*

### A.  NATURE OF THE CASE

1.	This employment discrimination case is brought by Plaintiff Verleshia Robinson, a 60-year-old African American female that was discriminated against by U.S. Shipping, Inc. based upon her race, gender, and age.  She was subjected to a hostile work environment based upon these protected classes and subsequently retaliated against in the form of constructive discharge in response to her complaints.

2.	Defendant U.S. Shipping, Inc. is a licensed ocean transportation intermediary company. *See*, www.usshippings.com/about.asp?id=129.

3.	Robinsons brings her claims pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et. seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, and 29 U.S.C. 621, *et seq*. ("ADEA"), and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §21.001, *et seq.*

### B.  PARTIES

4.	Plaintiff Verleshia Robinson is an individual, who is a citizen of the State of Texas and resides in Houston, Texas.

5.	Defendant U.S. Shipping, Inc. is a Delaware corporation that may be served with process by serving its registered agent:

> Corporation Service Company
> 251 Little Falls Drive
> Wilmington, DE  19808

## C.  JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this case because it arises under the laws of the United States and is brought to recover damages (federal question). 28 U.S.C. § 1331. This Court has supplemental subject matter jurisdiction over the Texas Labor Code § 21.051 and §21.055, because the state law claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.      Venue is proper in this judicial district and division under 28 U.S.C.§1391(b) and 42 U.S.C. §2000e-5(f)(3), because Title VII cases may be brought in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated and in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

7.      All conditions precedent to filing this lawsuit and as required by law have been performed or have occurred.

## D.    STATEMENT OF FACTS

8.      U.S. Shipping, Inc. provides long-haul marine transportation services for petroleum and chemical cargoes in the United States.  The ATB Galveston is one of U.S. Shipping Corporation's transport ships.

9.      Verleshia Robinson, a sixty-year old African American female, worked as a steward for U.S. Shipping, from December 2019 to May 2021.  She was the only female and only African

American aboard the ATB Galveston. All of her remaining co-workers were mostly white males and her managers were all white males.

10.    In December of 2019, the beginning of her tenure under Chief Engineer Ron Porter, she went aboard the ATB Galveston and introduced herself to him. Porter responded, "Oh, so you're one of them".  Robinson was aware of what "one of them meant", as a previous African American steward, who worked with Porter informed her that Porter had referred to her as a "little monkey".

11.    Management's thoughts on race and politics emanated to the work environment and was shared by Robinson's white male co-workers.

12.    On a number of occasions, Robinson had to complain to her union about the frequent comments/incidents that were racist, ageist, or sexist in nature.

13.    Robinson did not complain to Chief Porter about the racist comments, considering the culture he perpetuated within the vessel.  Not only did she learn that Porter had previously referred to another African American Steward as a "little monkey", but he laughed at Robinson when she reported that the white males were purposely smearing feces in areas so that they could return and laugh at her as she re-cleaned the area. Robinson was on notice that Porter approved of this behavior and scoffed at her complaint.

14.    Racism onboard the ATB Galveston under the direction of management was rampant and allowed.

15.    Captain Ross Mollow, the Senior Captain, in alignment with some of the racist political rhetoric referred to Covid-19 as the "Wuhan Virus". He encouraged his subordinates to ignore

the company's covid-19 protocols, i.e., employees did not wear masks, rarely quarantined, and continued to eat in the mess hall with their co-workers and Captain Mollow.

16.    Robinson considered Captain Mollow's behavior racist, hateful, and unprofessional.

17.    In February of 2021, when coming into the galley (kitchen) after breakfast, one of the chief mates exclaimed: "Captain [Ross] showed those f*cking n*ggers!"  As the chief mate looked over to Robinson, he stated, "Oh I'm sorry, I'm talking about the Peruvian people". Recognizing that her skin tone was similar in color to the Peruvians, Robinson stated:  "Hey Chief Mate I have a serious issue with you what you just said because they look like me.  Just like you called them that word (meaning n*gger), you will say that about me".

18.    The chief mate reminded Robinson that they, the white males, could say what they wanted on the ATB Galveston and the office, the supervising officers, were not going to do anything about it.  In fact, according to the chief mate, when Ron "Porter called Rosemary, the other steward, before Robinson a 'little monkey', in front of the officers in the mess hall, everyone laughed and no one told [Porter] he was wrong." According to the chief mate, "Ron gets away with everything."

19.    The chief mate continued to ask Robinson's opinion on food, stores, and "Black Lives Matter", to which Robinson evaded her answer until she stated, "Put yourself in a black person's place for a moment and you, just maybe will understand".

20.    On another occasion, in late March of 2021, a third mate (white male) went to the galley while Robinson was dismantling the salad bar for later use.  The third mate turned on a video on his cell phone and made the volume very loud.  The sound of the words "kill the

n*gger" rang from the third mate's cell phone. The third mate began to cheer on the video he was watching, "yeah kill the niggers!" he exclaimed. As he finished his chant, he turned and saw Robinson.  He turned down the volume but continued to watch the hateful message.

21.    At the end of March of 2021, as Robinson was moving items in the recreation room, Captain Chris (l/n/u), the junior captain, informed her that another Steward, Cathy, from ATB Brownsville would replace her. Cathy, a white female, was a permanent employee on the Brownsville ship. Robinson thought it was curious as to why the junior captain would tell her that she would be replaced.

22.    On April 3, 2021, U.S. Shipping's investigating attorney Peter Tompkins from New Orleans interviewed Robinson regarding her complaints.  She repeated her complaints regarding the racist comments and incidents that she experienced, including the "captain showed those n*ggers" and "kill the n*ggers" statements and how the young employees did not have to really adhere to the company's covid protocols considering because they were young the virus would not affect them as much.  She further complained of the retaliation she experienced, white male employees smearing their feces and urine in areas so that they could watch and laugh at her while she re-cleaned the areas or walking out without coverage of their private body part areas.

23.    In response to her complaints to U.S. Shipping about racist, sexist, and ageist incidents and comments, the company only addressed her complaints that the company failed to adhere to company policies on covid and "mistakenly" referred to it as the Wuhan virus.

24.     U.S. Shipping purposely avoided addressing her complaints of the racist, sexist and ageist comments and incidents, e.g., mostly naked males in areas they knew she would be, feces and urine smeared in areas so that the crew could watch and laugh as she re-cleaned, the frequent use of the word "ni$$er" or the retaliation she experienced.

25.     U.S. Shipping characterized her complaints of race discrimination, gender discrimination, age discrimination, and hostile work environment as 1) complaints of simple company policy violations; 2) poor reflection of her due to laziness in not wanting to clean the bathroom areas that were purposely smeared with feces and urine after she complained; and 3) her being untruthful about being discriminated against—all because the men (the white males onboard that were interviewed) said they did not do anything wrong.

26.     U.S. Shipping's actions constitute intentional gender, race, and age discrimination, hostile work environment based upon gender, age, and race, and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et. seq*. ("Title VII"), Age Discrimination in Employment Act of 1962, and 29 U.S.C. § 621, *et seq.,* and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §21.001, *et seq.*

27.     As a result of U.S. Shipping's actions, Robinson has suffered and will continue to suffer pecuniary losses, including but not limited to lost wages, lost raises, seniority and benefits associated with employment.

28.     Robinson seeks attorneys' fees and costs of suit.

29.     Robinson is now suffering and will continue to suffer past and future non-pecuniary

losses, emotional and physical pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. These irreparable injuries and monetary damages are the result of U.S. Shipping's practices, and they will continue unless and until this Court grants relief.

### E.   CAUSES OF ACTION

#### COUNT NO. 1-GENDER DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT AND THE TEXAS LABOR CODE

30.   Robinson repeats and re-alleges the facts set forth in the preceding paragraphs.

31.   Robinson was an employee within the meaning of Title VII and the Texas Labor Code and belongs to a class protected under the statute, namely, she is a female. See 42 U.S.C. §2000e(f) and Texas Labor Code § 21.002(7).

32.   U.S. Shipping is an employer within the meaning of Title VII and the Texas Labor Code. See 42 U.S.C. §2000e(b) and Texas Labor Code § 21.002(8).

33.   U.S. Shipping's actions, either through itself or its agents, representatives and/or employees, constituted unlawful race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 and the Texas Labor Code § 21.051.

34.   At all relevant times, Robinson performed the necessary functions of her job.

35.   Robinson was the only African American female onboard the ATB Galveston. The remainder of the co-workers and officers were younger, white, males.

36.   Robinson suffered an adverse employment action when she was constructively discharged from U.S. Shipping.  She explained to U.S. Shipping that her working conditions

were intolerable, e.g., chief mate referred to Peruvians (with similar skin tone as her) as "n*ggers more than once in her presence, the frequent smear of urine and fecal matter so that white male crew members could laugh at her while she cleaned it, and the employees being allowed to not follow protocol because they were young and would not be as affected by covid, while she was in her late 50s.

37.    Robinson was replaced by a non-African American male.

38.    As a result of U.S. Shipping's gender-based discrimination, Robinson has suffered and expects to suffer pecuniary losses, including but not limited to lost wages and benefits associated with her employment.

39.    As a further result of U.S. Shipping's discriminatory conduct, Robinson has suffered non-pecuniary losses, including *inter alia*, humiliation, damages to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.

40.    U.S. Shipping has acted with malice and/or reckless indifference to Robinson's protected rights, thereby entitling her to punitive damages under Title VII and the TEXAS LABOR CODE § 21.2585.

41.    U.S. Shipping's discriminatory conduct forced Robinson to retain the assistance of counsel in order to redress the harms inflicted on her. Consequently, she seeks reasonable attorneys' fees, expert fees, and court costs. *See, e.g.,* 42 U.S.C. § 1988 and the Texas Labor Code § 21.259.

## COUNT NO. 2-RACE DISCRIMINATION PURSUANT TO TITLE VII AND THE TEXAS LABOR CODE

42.    Robinson is a member of a protected class, as an African American female.

43.    Robinson was qualified for the role of Steward.  She had been a merchant marine for over ten years.  U.S. Shipping never notified her of any poor performance or inability to perform her role.

44.    Robinson suffered an adverse employment action when she was constructively discharged from her role at U.S. Shipping.  She explained to U.S. Shipping that her working conditions were intolerable, e.g., chief mate referred to Peruvians (with similar skin tone as her) as "n*ggers more than once, another white crew member chanting "kill that n*gger!", the frequent smear of urine and fecal matter so that crew members could laugh at her while she re-cleaned areas, and the employees being allowed to not follow protocol because they were young and would not be as affected by covid.

45.    Robinson was replaced by a Steward that was non-African American.

46.    As a result of U.S. Shipping's race-based discrimination, Robinson has suffered and expects to suffer pecuniary losses, including but not limited to lost wages and benefits associated with her employment.

47.    As a further result of U.S. Shipping's discriminatory conduct, Robinson has suffered non-pecuniary losses, including *inter alia*, humiliation, damages to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.

48.     U.S. Shipping has acted with malice and/or reckless indifference to Robinson's protected rights, thereby entitling her to punitive damages under Title VII and the TEXAS LABOR CODE § 21.2585.

49.     U.S. Shipping's discriminatory conduct forced Robinson to retain the assistance of counsel in order to redress the harms inflicted on her. Consequently, she seeks reasonable attorneys' fees, expert fees, and court costs. *See, e.g.,* 42 U.S.C. § 1988 and the Texas Labor Code § 21.259.

### COUNT NO. 3-HOSTILE WORK ENVIRONMENT BASED UPON GENDER AND RACE BASED UPON TITLE VII AND THE TEXAS LABOR CODE

50.     As an African American female, Robinson belongs to a protected group.

51.     She was subjected to unwelcomed harassment based upon gender and race. The chief mate referred to Peruvians (with similar skin tone as her) as "n*ggers more than once in her presence.  When she objected, he told her that they could get away with it, giving any reasonable person notice that such racist words would continue without being addressed. Her white crew members frequently smeared urine and fecal matter across the bathroom and came in to laugh at her while she cleaned it. A white male employee sat in the galley and yelled, "Kill that ni**er!" Further, the males with smiles on their faces, walked in public areas, mostly nude, near Robinson with small hand towels that barely covered anything.

52.     The harassment affected a term, condition, or privilege of employment as it was sufficiently severe or pervasive and altered the conditions of Robinson's employment and created an abusive working environment. It was an intimidating atmosphere with mostly all

- 11 -

white males and Robinson being the only African American and only female. But the crew members made it worst when they frequently made comments about race or continued to smear urine and fecal matter across the bathroom and laughed about it. This, among other acts of the crew members, interfered with Robinson's ability to do her job. She was constantly re-cleaning the restroom areas because of her crew members' acts of discrimination and retaliation.

53. U.S. Shipping knew about or should have known of the harassment in question and failed to take prompt remedial action. The crew members' behavior regarding race was not a new topic for management. The senior captain continued to refer to the covid-19 virus as the "Wuhan virus". The chief mate, a supervisory role, felt comfortable saying that the captain showed those "n*ggers" referring to Peruvians with the same skin color as Robinson. When she opposed this behavior, he stated that nothing was going to be done to them. Further, Robinson complained to her union and her union contacted U.S. Shipping, which prompted an interview with an investigating attorney. To the attorney, Robinson explained the racial and gender issues, among others. Nonetheless, even after her complaint, the crew members continued to laugh at her while she re-cleaned areas that they had smeared feces and urine on during a pandemic.

54. Robinson's work environment was both objectively and subjectively offensive, one that a reasonable person would find abusive, and one that Robinson found abusive.

55. U.S. Shipping's discriminatory conduct forced Robinson to retain the assistance of counsel in order to redress the harms inflicted on her. Consequently, she seeks reasonable

attorneys' fees, expert fees, and court costs. *See, e.g.,* 42 U.S.C. § 1988 and the Texas Labor Code § 21.259.

### COUNT NO. 4-AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED AND THE TEXAS LABOR CODE

56.　　Robinson repeats and re-alleges the facts set forth in the preceding paragraphs.

57.　　Robinson's younger male coworkers were given preferential treatment vis-à-vis on how U.S. Shipping's Covid-19 protocols were followed. Specifically, her captain told her that the younger employees were not required to follow protocol because they were young and would not be affected by covid. Nonetheless, this behavior, e.g., not wearing masks and not quarantining put Robinson in danger, as she was a 59-year-old woman at the time.

58.　　In fact, Captain Ross Mollow encouraged his subordinates, younger males, to ignore the covid-19 protocols, i.e., employees did not wear masks, rarely quarantined, and continued to eat in the mess hall with their co-workers and Captain Ross.

59.　　U.S. Shipping's actions as described above constitute intentional age discrimination under the ADEA, 29 U.S.C. §621, *et seq*., and the Texas Labor Code.

60.　　As a result of U.S. Shipping's actions, Robinson has suffered and will continue to suffer pecuniary losses, including but not limited to lost wages, lost raises, seniority and benefits associated with employment.

61.　　U.S. Shipping's actions were willful, thereby entitling Robinson to liquidated damages under 29 U.S.C.§626(b).

62.　　Robinson seeks attorneys' fees and costs of suit under 29 U.S.C.§626(b).

63.     Robinson is now suffering and will continue to suffer past and future non-pecuniary losses, emotional and physical pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. These irreparable injuries and monetary damages are the result of U.S. Shipping's practices, and they will continue unless and until this Court grants relief.

64.     U.S. Shipping has acted with malice and/or reckless indifference to Roberts' state-protected rights, thereby entitling her to punitive damages under Texas Labor Code §21.2585.

### Count No. 5-Hostile Work Environment Based Upon Age Pursuant to the Age Discrimination In Employment Act, As Amended and the Texas Labor Code

65.     Robinson was 59 years old during her employment with U.S. Shipping; therefore, she was over the age of 40.

66.     She was subjected to harassment, either through words or actions, based on age. When Robinson, who wore a mask and adhered to U.S. Shipping's covid-19 protocols, complained that the crew members were not wearing masks or quarantining, her captain excused their behavior and stated that they were young and would not be affected as much by the virus.

67.     In fact, Captain Ross encouraged his subordinates, younger males, to ignore the covid-19 protocols, i.e., employees did not wear masks, rarely quarantined, and continued to eat in the mess hall with their co-workers and Captain Ross.

68.     The nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment.  This behavior, e.g., young crew members,

encouraged by management, to not wear masks or quarantine properly put Robinson in danger, as she was a 59-year-old woman.  Yet, U.S. Shipping was only concerned about the freedoms of their younger employees and not older ones such as Robinson.  These acts were frequent, the younger crew members ate at the mess hall area (cafeteria) everyday and simply refused to adhere to covid-19 protocols.  These acts demonstrate a level of liability on the part of U.S. Shipping, the employer.

### COUNT NO. 6-RETALIATION PURSUANT TO TITLE VII, ADEA, AND THE TEXAS LABOR CODE

69.    Robinson engaged in protected activity.  She explained to the chief mate that she opposed him referring to the Peruvians as "ni$$ers" and pointed out to him that she had their same skin tone.  She complained to her union a) regarding the frequent use of the word "ni$$er" including "yeah kill that ni$$er!"; b) that her captain excused the younger crew member's refusal to adhere to U.S. Shipping's protocols on covid-19 including wearing masks and quarantining because they were younger; c) that the males, knowing she was in certain areas would walk through mostly in the nude with small towels as they smiled.

70.    Additionally, she answered questions from U.S. Shipping's investigation attorney Mr. Peter Tompkins and provided her complaints.

71.    In response to Robinson's complaints, U.S. Shipping undertook materially adverse action against her. The younger white male crew members ramped up engaging in smearing feces and urine in areas that she had cleaned and continued to not wear masks or properly

- 15 -

quarantine. Nonetheless, Robinson was required to continue adhering to the company's covid-19 policy, e.g., wearing a mask.

72. As a result, Robinson explained to U.S. Shipping and her union that her working conditions had become intolerable, and but for her working conditions, she would not have left. See *supra* at ¶37.

## F.    JURY REQUEST

73. Robinson requests a trial by jury.

## G.    PRAYER

For these reasons, Plaintiff Verleshia Robinson prays that Defendant U.S. Shipping Inc. be cited to appear and answer herein and that this case be advanced for trial before a jury, and that on final hearing this Court grant the following relief:

a. for back pay, plus prejudgment interest as provided by law, from the date of her termination until the date of judgment;

b. for an award of the present value of front pay due to her for a reasonable period following the date of the judgment, calculated as of the date of judgment;

c. for compensatory damages including emotional pain, suffering, inconvenience, and mental anguish;

d. for additional compensatory damages for severe mental anguish in the past and future, injury to her reputation, for adverse effects of her career, and for diminished earning capacity resulting from the discriminatory/sexually harassing and retaliatory actions of Defendant;

e. the greater of liquidated damages under the ADEA or punitive damages under Chapter 21 of the Texas Labor Code as Defendant's actions were willful;

f.  for exemplary and/or punitive damages against Defendant in a sum determined by the trier of fact to punish and deter continuation of Defendant's unlawful employment practices;

g.  for reasonable attorney's fees and costs and expenses related to the litigation of this claim;

h.  prejudgment interest at the applicable rate;

i.  postjudgment interest at the applicable rate; and

j.  judgment for all the other relief to which Plaintiff deems herself entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: _____

Melissa Moore
Tex. Bar No. 24013189
melissa@mooreandassociates.net
Rochelle Owens
Tex. Bar No. 24048704
rochelle@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF**